SUNDT CONSTRUCTION v. AIR FORCE ok Mr. Vela, am I pronouncing that correctly? You are pronouncing that correctly. Ok. Good morning and for the record my name is Brian Vela. I am representing Sun Construction on this appeal. The appeal by Sun is from the grant of summary judgment by the Armed Services Board of Contract Appeals in favor of the Air Force upholding the award of liquidated damages against Sun. We rely primarily on briefs in this matter, but the ground of our appeal is that the evidence is uncontested that the parties to this modification did not intend to address the completion date for the overall task order within the terms of modification 26. Well let me answer that. It seems to me, so maybe I'm misunderstanding, that the thrust, certainly of your gravely, is all aimed at the fact, your argument that there are factual disputes here and that summary judgment was inappropriate. Am I right about that? Well there's the question of the interpretation that the board gave to terms within modification. So first the board conferred terms that were not used by the parties and in fact the parties expressly determined and agreed not to use the term completion date within that mod and the board comes along and imposes that very term in the mod and then makes the factual finding that Sun agreed to those split completion dates Is that a factual finding or is that construing the terms of the agreement? Why is that a factual finding? Why isn't that a conclusion law? I mean it's construing what the agreement was, what the contract said, what the terms of the agreement were, right? Well no, I think that's very much a factual finding as to what the parties intended by the use of the terms that they used, not the terms that the board inferred and read into the modification. Are you saying that the board rewrote the contract? I'm saying that the board read the term completion date into that modification and has used it throughout its opinion. The board says consistently time after time after time, completion date, completion date, completion date, whereas the modification is conspicuously absent. It does not use those terms. It does use, it refers to the period of performance, does it not? It does refer to period performance. And what is ambiguous about the phrase remain unchanged? Period of performance in the context of a task order such as this that had one completion date for the entire scope of the work. So period of performance in the context of this modification and the term schedule date in the context of this modification had to be considered as to what impact those sub-components would have on the overall critical path of the work under the task order. If you thought that language was so clear and that it did not impose two different completion dates upon you, then why is it that you jumped so much when they used the exact same language in the next modification? Why did you complain when you actually saw the language the next time around? Well, I think that that's clear evidence that had the parties intended to use the terms completion date and had intended to tie those dates to the application of the liquidated damages clause, they would have done exactly that. Modification 29, in fact, uses those terms, cites the clause, puts the contractor on notice that you're entering into an entirely different risk profile than the one you signed up for initially. Initially, you signed up to do a scope of work with one end date. It's the contractor's prerogative to schedule his work, to figure out what periods of performance are associated with sub-components, but you have to complete the entire work by an end date. Now, this modification... So what you're arguing is that there can only be one completion date and it has to be the last date for all units. I'm arguing, sir, that the terms of the contract specify that the contractor shall complete the entire work. Is my statement wrong or not? No, sir. No, sir. So what you're basically saying is that under the liquidated damages clause, there's only one completion date. Liquidated damages are triggered by a single date, and once you're beyond that date, you measure those dates. Which is the last date for performance of any of the units, is what you're saying, right? Well, it would be the last date that a properly adjusted schedule would allow for the contractor to complete the entire scope of the work. So you're saying a modification, even an unambiguous modification, can't change that? No, absolutely it could. If the parties had agreed... It says the period of performance has changed from the 28th of February 2007 to 14th of September 2007 for Vandenberg GOQ Building 1 only, and then it goes on to say that the February 2007 date remained unchanged for everything else, and it specifically lists it. And until there's a proper schedule analysis to calculate what impact the various modifications to this task order had on the ultimate completion date, we don't know which party had responsibility for delays for exceeding any of those dates. We don't know what the critical path was. My contention would be... But the contract doesn't say that. The contract allows for one exception, and that exception is very limited. Now, you would like to add all of the other conditions, but that's nowhere to be found in the agreement. I don't think that that's what my argument is, Your Honor. I think that we're arguing precisely that the terms of the contract are to be given their meaning and their intent. Now, the contractor agreed to sign up and put himself at risk for doing the entire work within and having it complete by a specific date. The government acknowledged that, well, we prevented you from completing the entire work by that specified date. We changed the general officer's order scope of your work and pushed that out so that you couldn't possibly complete by the specified date. So they extended that on that key. You'd already missed the deadline for everything else. But you can't pick and choose now and say to the contractor, well, we're taking the flexibility away from you to schedule your work and to do it in a manner that allows you to complete the entire work by a specific date. The government can't unilaterally now change and inject into the contract multiple milestone dates with separate assessments of liquidated damages. I mean, the FAR allows for that. The FAR clauses are available to do that. If that's what the government had wanted to do initially, they could have set these specific units by these specific dates, but that's not what... So now I understand your argument. What you're saying is, yes, this is what the contract says, and yes, that's what we signed, but they can't legally do that even if we executed the contract that way. Well, no, I'm saying that's very much not what the contract provided for. It says what it says, right? It says that the date doesn't change. The period of performance doesn't change. The completion date was something that the government couldn't assess nor consult properly... What's the difference between the period of performance... Well, the period of performance to do a particular item of work would be the duration for that particular activity. So the period of performance for doing the general officer's quarter work might have been 13 weeks. The period of performance for doing some of the other activities may have been more or less than that. A critical path schedule analysis would show how those activities are linked together and whether at the final date, which party had responsibility for which aspect for delaying the overall completion date for the work. How are the liquidated damages here computed? There are two provisions here. If you look at A3 where the clause is set out, how are the liquidated damages calculated? Was there a per day as well as a per unit element of that? I believe that there was. Okay, so the two were hit with 380 days for each day of delay and then $42 for each day of delay with respect to each individual unit, right? Correct. Our point is that this was a summary judgment proceeding. And we were entitled to have the benefit of, we modified the release language within the terms of the modification. We offered affidavits and declarations on behalf of the people that participated in negotiations with the government, which were never contested by the government. There was no counter affidavit or declaration. So the only evidence about the intent of the parties with respect to this modification was the evidence offered by SUNT, and it was disregarded by the board, and the board sought out its own extrinsic evidence. The board said, well, your prior course of dealing and language and other modifications suggest to us that this is the proper reading, the better reading of the clause. No, that's not really extrinsic evidence. What they did was they looked to all of the documents and considered the documents in their entirety when construing the contract. That's very different than saying they looked to extrinsic evidence. Well, I would interpret extrinsic evidence as outside the four corners of the modification. So maybe I'm using the term differently than you are, Your Honor. But what I'm saying is they ignored evidence offered about what the parties intended for this particular mod by going back and looking at prior modifications that had no relevance to this particular mod. That's not giving the benefit of the doubt to the non-moving party. That's making the inferences and drawing inferences very much in favor of the moving party. And I'm sorry, I'd like to reserve the rest of my time. Thank you, Your Honor. Ms. Kirshner? May it please the Court. There are two issues for the Court, two primary issues. Let me ask you a question. It seems to me Mr. Bell may have a point here. If you look at the liquidated damages clause, there are two kinds of liquidated damages. And let me rephrase his argument a little bit. Perhaps he's saying, with respect to the first clause, that you have to look for the ultimate completion date for all of the work, that is for the $380 a day liquidated damages, but that for the individual units you have to look for the completion date for the individual units. So under that theory, it would be proper to hit them with the $42 a day for the units that weren't completed on time, but that it wouldn't be appropriate to hit them with the $380 a day for missing the overall schedule. Is that a reasonable interpretation of this? No, Your Honor. There are two components. The Court is correct that there are two components of the liquidated damages clause. And I think in order to get to the correct application of the liquidated damages clause, you must first decide whether the Board has correctly construed Modification 26. Well, that's what I'm asking about. Right, right. But it seems to me that where the first clause says if the contractor fails to complete the work within the time specified, maybe that's referring to the last date for the completion of any of the work. In which event Mod, whatever it was, the 26th, whatever, extended the ultimate completion date for one of the units, so it extended the ultimate date for completion of all the work? Well, the Court is correct that there are two components. And I think we're both in agreement as to how you apply the unit component, that that is done on a, whether the unit is complete, and it's the unit times the number of days times the rate. So all you're asking about— You seem to be correct that these units, other than the officer's quarters, whatever it was, weren't completed on time, and that you could assess the $42 a day for each unit that wasn't completed on time. That seems to be a pretty good argument, okay? So let's put that aside. But with respect to the first component of liquidated damages, why isn't Mr. Bella correct that that liquidated damages provision is invoked only when the ultimate date for completion of all of the work is not complied with? What the language is there in the FAR clause for liquidated damages is if the contractor fails to complete the work within the time specified in the task order for construction services issued there under. There was not only unit repair work, unit renovation work. There was also demolition work, which is just site work. And, for example, on the Youngstown demolition site, that had to be demolished and cleaned up. So that is site work that was not completed on time, and liquidated damages was assessed for that work. I don't think you're understanding my question. I'm saying with respect to the first clause here, it says if the contractor fails to complete the work within the time specified, why isn't the date specified for the completion of the work the last date for completion of all the work, as opposed to interim dates for completion of some of the work? You could just give me one second. I want to make sure I have the language you're quoting right in front of me. The reason is because the parties agreed in Maw 26 that there were two separate completion dates. The question is, what's the significance of that? The liquidated damages clause seems to contemplate a single date, not two dates, in the first part of liquidated damages work. So if you extend the date for some of the work, why isn't the last date the significant date for the first part of the liquidated damages clause? The way the board read this portion of the clause was that if the contractor fails to complete the work within the time specified in the task order as modified, referring to Maw 26, and then the board said in Maw 26 the parties explicitly agreed that there would be an extension of time only for one unit, and everything else was late. So why doesn't the extension of time for one unit extend the time for purposes of the first liquidated damages clause? Because the parties only agreed that one unit could be completed late, and so you don't assess damages for that particular unit, the general officer's quarters unit, there are no damages assessed for that unit being late. But the clause maintains, excuse me, Maw 26 maintains all of the dates for all of the other parts of the work, and that's on, for example... Sure, and that's relevant for the second part of the liquidated damages clause because that contemplates looking at the completion date on a unit-by-unit basis, and because they didn't complete some of the units within the allotted time, the second liquidated damages clause is invoked, and the $42 a day can be imposed. But that doesn't really answer the question as to whether the first clause can be applied when you extend the date for some units but not for others. Well, I think you can see this in the simplest case. If there was only one unit and the unit was not completed on time, that unit would... You would still have to pay your site damages and your unit damages. Well, why? I mean, why is that ambiguous? Suppose in the original contract there were units A and B, and the completion date for unit A was February and the completion date for unit B was March, okay? So if the work for both units was completed by March, how can the first part of this liquidated damages clause be invoked? Because it has... There are two components being the site component and the per-unit component, and the site component applies all the time. As long as the work, any work, is not complete. Any work not being complete, then you get the site component. Well, that's the question of interpretation, whether it's any work that's not complete or whether it's all work that's not complete. I agree that there's a question of how you interpret this clause, and the board reasonably interpreted it as being if any of the work is not complete, then you are assessed the site component, and then on a unit-per-unit basis for each of the other units. And as I said, there was a work that was not complete, demolition work that was not complete in a timely manner, as well as the... Does it help you that as of February, when they had not completed any of the units, or essentially any of them, the government said, We are holding you to this date, and we're going to assess liquidated damages, and it wasn't until much later, after all the units except the one were done, that the government decided to give them a break on that one unit. I think that's certainly one of the facts that the board cited in its opinion. It said that SONC knew that the government was going to apply the liquidated damages clause. And it seems like the court has agreed that there were two completion dates, and the work not being completed, that liquidated damages were correct, should be assessed. We don't infer what our decision is going to be. I understand. As I started, there's really only two issues, being the correct interpretation of Mod 26. I think that's a very clear issue in this case. There's two completion dates set out in Mod 26. For example, it's on the appendix page A489, and then there's the release language on page 489 also. So it's clear that there are two completion dates. The release also is not ambiguous, as the board pointed out. The only thing that is released is the upgrades to the general officer's quarters unit. And that issue is fully settled through the equitable adjustment in Mod 26. The only other issue is whether there were disputed issues of material fact. And here, the board is correct if there were no disputed issues of material fact. In the claim, there is no allegation that the delay on the general officer's quarters unit impacts the other units. There's no such allegation in the claim. Then a complaint is filed at the board, and there are no such allegations of any linkage between the general officer's quarters unit upgrades and the other units being delayed. And then when the summary judgment motions are presented to the board for decision, no factual evidence is introduced by SOMPT to show any linkage between the general officer's quarters units and the other units. So here, it's very clear that there were no real issues of material fact.  by putting in affidavits that directly contradict the plain language of the Mod 26. And as the board said, we look first to the language. The language has two completion dates, and there's nothing ambiguous about that. And you can't use parole evidence of your supposed intent to contradict the plain language of the agreement. So the board correctly applied the parole evidence rule. And one of the cases that would be appropriate to look to, cited in our brief, is the Applied Industries case, where there, the contractor tried to introduce evidence of a subjective intent contradictory to the language of the contract. And that would be in violation of the parole evidence rule, therefore it was not considered. I think I'd just like to go back to where we started, if I could. You were asking about the Liquidated Damages Clause and the board's interpretation of the Liquidated Damages Clause. The arguments that were presented to the board really focused on Mod 26, and there was not an argument that the Liquidated Damages Clause was ambiguous. The argument presented to the board was that the Liquidated Damages Clause was clear on its face, and the ambiguity that was being alleged was to be found in Mod 26. The board proceeded by first analyzing Mod 26, concluding that it was very clear, and then applied its understanding of Mod 26 to the Liquidated Damages Clause, but pointed out that there were two components, that the site work was not completed in a timely manner, as well as the unit work not being completed in a timely manner, and so therefore both components were assessed. The board is now open for questions. Thank you, Ms. Dixon. Mr. Bally, do you have a report? Yes. I think this dialogue demonstrates that what's a reasonable interpretation of the terms period of performance and schedule dates is used within the context of this modification is very much in doubt. There are different interpretations, and when the board stepped in and said we're going to resolve this by simply defining those terms as quote-unquote completion dates, that changed the entire contract that Suns had signed up to. Suns signed up to put itself at risk for a single completion date for all the work. Now the board said no. We think that we have now multiple completion dates. You're at risk for liquidated damages for violating those multiple dates. The government's also argued that there's nothing ambiguous about the release language. I would invite court to look at that closely. It says that the release relates to further equitable adjustments arising out of or in connection with changes to this modification, specifically for the GOQ-01 upgrades only. Releasing the government from further equitable adjustments to changes to this modification. I personally can't tell you what changes to this modification that release language refers to, but to say that this is an unambiguous release is clarity that I certainly don't have, and I don't know that anybody could read that and say that it's clear on its face. The cases say that if the language is intended to be unqualified, in a qualification language, there would be no reason to insert it. We know that the language was inserted at Suns' request. The language is certainly ambiguous. Suns should have had its day in court to come in and explain what it intended by this release and how that comported with its use of the terms in the mod. This court has stated that the language of a contract has to be given the meaning that it would be derived by a reasonably intelligent person acquainted with the contemporaneous circumstances. By ignoring Suns' evidence, the Board failed to acquaint itself with the contemporaneous circumstances of this case, and the meaning it gave to the modification was directly contrary to the intent of the parties, and so that a contract modification that was intended to address a government-directed change was interpreted instead by the Board as a concession by the contractor of liability for liquidated damages. It turned the entire modification on its head. The modification was intended to say, the government acknowledges we prevented you from completing the entire work on time, your work on the GOQ unit was extended out until September. Somehow, that's been interpreted by the Board as saying, oh no, what really happened there was you agreed to split your completion dates under the terms of your contract, and you agreed to that unambiguously, and by doing that, you exposed yourself to liquidated damages, you conceded liability for liquidated damages, and the Board contends that's a reasonable interpretation. I submit that it's utterly not. We're entitled to our day in court. Thank you. Thank you, Mr. Ellis. Thank you, both counsel. The case is submitted.